**NATIONAL CORN GROWERS ASSOCIATION, New Energy Company of Indiana, Archer Daniels Midland Company, Ohio Farm Bureau Federation, Inc., and South Point Ethanol, Plaintiffs,**

v.

**William VON RAAB, Commissioner, United States Customs Service, United States of America, Defendants,**

and

**Tropicana Energy Company, Inc., Party-In-Interest.**

No. 86–4–00487.

United States Court of International Trade.

Dec. 10, 1986.

Williams & Connolly (Aubrey M. Daniel, III, Stephen L. Urbanczyk, Manley W. Roberts and Robert W. Hamilton), Washington, D.C., for plaintiffs.

Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, International Trade Field Office, Civil Div., Dept. of Justice (Saul Davis and Paula N. Rubin), New York City, for defendants.

McDermott, Will & Emery (R. Sarah Compton, Kurt J. Olson and Lizbeth R. Levinson) Washington, D.C., for party-in-interest.

## OPINION

TSOUCALAS, Judge:

This action is before the Court on the motion by party-in-interest, Tropicana Energy Co., Inc. (Tropicana), to dismiss plaintiffs' action as moot due to the enactment of the Tax Reform Act of 1986, Pub.L. 99–514, H.R. 3838, 99th Cong., 2d Sess. (1986).[1]

### Background

Plaintiffs, domestic manufacturers of ethanol, commenced an action, pursuant to 19 U.S.C. § 1516 (1982), to contest the duty-free entry of ethanol from the Caribbean into the United States. Party-in-interest, Tropicana, is engaged in the importation of ethanol (ethyl alcohol) to be used as fuel. It operates at least one purification facility in Kingston, Jamaica which utilizes hydrous ethyl alcohol feedstock imported from Brazil, Spain, and other nations. This feedstock is subjected to a process of azeotropic distillation which essentially removes the water and allows the now anhydrous alcohol to serve as motor vehicle fuel. By processing the ethanol in Jamaica, Tropicana has been able to take advantage of the provisions of the Caribbean Basin Economic Recovery Act (CBERA), Pub.L. 98–67, Title II, 97 Stat. 384 (1983), codified as amended at 19 U.S.C. §§ 2701–2706 (Supp. II 1984). Under CBERA, articles imported directly into the customs territory of the United States may qualify for duty-free treatment[2] if (a) they are wholly the product or manufacture of a designated beneficiary country or (b) they are substantially transformed into a new or different article within a beneficiary country and if they meet certain local content restrictions. *See* 19 U.S.C. § 2703(a). Customs has ruled that the azeotropic distillation process is a substantial transformation and therefore has accorded duty-free treatment to Tropicana's imported ethanol. The validity of these rulings forms the underlying substantive dispute in this action. At this juncture, however, the Court only considers Tropicana's motion to dismiss due to enactment of the Tax Reform Act of 1986, which it asserts will moot plaintiffs' claim for relief.

### Tax Reform Act

The Tax Reform Act of 1986 represents the culmination of efforts to rewrite the federal tax code. It also contains a number of provisions which impact upon the nation's trade laws. Of interest in this action is § 423 which specifies tariff treatment for ethyl alcohol fuel. In effect, § 423 represents a decision to legislatively overrule Customs' decisions holding that azeotropic distillation is a substantial transformation that warrants duty-free treat-

---

1. Tropicana originally sought a stay of the proceedings. After enactment of the legislation, it requested that the motion be treated as one for dismissal. The federal defendants join Tropicana in support of the motion.

2. The tariff on imported fuel ethanol would otherwise be 3% *ad val.* plus $ .60 per gallon pursuant to items 427.88 and 901.50, TSUS.

ment under CBERA. Congress has determined that the distillation facilities do not provide the type of economic development opportunities that justify preferential tariff treatment. In the language of the legislative history, they are "pass-through" operations. H.R.Cong.Rep. No. 841, 99th Cong., 2d Sess. II–132 (1986). "[T]he conferees seek to encourage meaningful economic investment in CBI countries and insular possessions." *Id.* Accordingly, Congress has tightened the requirements for duty-free treatment of ethanol under CBERA. The new requirement is that, subject to one exception, "no ethyl alcohol or a mixture thereof may be considered [to qualify for duty-free treatment as a product of a beneficiary country] unless the ethyl alcohol or mixture thereof is an indigenous product of that insular possession or beneficiary country." § 423(a). Section 423(c)(2) defines "indigenous product" as follows:

> (2) Ethyl alcohol or a mixture thereof may be treated as being an indigenous product of an insular possession or beneficiary country only if the ethyl alcohol or a mixture thereof—
>
> (A) has been both dehydrated and produced by a process of full-scale fermentation within that insular possession or beneficiary country; or
>
> (B) has been dehydrated within that insular possession or beneficiary country from hydrous ethyl alcohol that includes hydrous ethyl alcohol which is wholly the product or manufacture of any insular possession or beneficiary country and which has a value not less than—[3]

Section 423(b) provides that up to 20,000,000 gallons of ethanol may be imported into the United States, not subject to § 423(a), in each of the calendar years 1987 and 1988 provided that it was dehydrated in an azeotropic distillation facility established before, and in operation on, January 1, 1986. Section 423(b)(1)(A).[4] It is the

interpretation of the requirements of § 423(a) and § 423(b) relative to the terms of CBERA as presently enacted that is principally at issue for the purposes of this motion.

**The Parties' Claims**

Tropicana contends that the new statute renders this case moot. Under its interpretation, 20,000,000 gallons of ethanol may be imported into the United States duty-free in 1987 and 1988, as long as it is distilled in a qualifying facility. Any importations beyond that amount are governed by the § 423(c)(2) and § 423(a) requirements. These provisions would allow for duty-free treatment of azeotropically produced ethanol distillate so long as it was mixed with the proper amounts of locally produced ethanol. *See* § 423(c)(2)(B). The substantial transformation question presented by CBERA as currently enacted is not relevant to entries of ethanol fuel after December 31, 1986. Moreover, given the prospective nature of § 1516 relief, *see ASG Indus. v. United States*, 82 Cust.Ct. 101, 154, C.D. 4794, 467 F.Supp. 1200, 1242–43 (1979), this Court would be unable to order reliquidation of prior entries. *Cf.* 19 U.S.C. § 1514 (1982). Therefore, under Tropicana's view, there is no controversy for this Court to adjudicate since the bill has been enacted.

Predictably, plaintiffs take a different view of the statute. Their position is that "the duty status of [§ 423(b)] ethanol is unchanged by the bill and would be determined by the law as it now stands without reference to Section 423." *Plaintiffs' Opposition to the Motion for a Stay* at 9–10. "[T]he only plausible interpretation of the drafter's intent is that if duty-free treatment is denied to the grandfathered ethanol as a result of this litigation, such treatment would also be denied to all other entries of ethanol merely dehydrated in the Caribbean, regardless of whether the etha-

---

**3.** The remainder of § 423(c)(2) specifies the local content rules which are not specifically at issue here.

**4.** Tropicana's facility apparently meets this requirement.

nol is considered an 'indigenous product' under Section 423(c)(2)(B)." *Id.* at 13 n. 3.

In short, plaintiffs contest Tropicana's interpretation of § 423 on two grounds. First, even assuming all the other requirements of CBERA as currently enacted are met, plaintiffs assert that this Court must still rule that azeotropic distillation of ethanol is a substantial transformation in order for Tropicana to import the ethanol governed by § 423(b) without duty. Secondly, plaintiffs interpret § 423(a) as merely imposing a requirement in addition to those already present in existing law, to wit, that fuel ethanol, with the exception of § 423(b) ethanol, be an "indigenous product" as defined in § 423(c). Plaintiffs' seize upon the language of § 423(b) which they claim merely exempts 20,000,000 gallons in both 1987 and 1988 only from the rule announced in § 423(a) but not from the remainder of CBERA as currently enacted. Similarly, plaintiffs look to the language of § 423(a) to establish their interpretation: "no ethyl alcohol or mixture thereof may be considered ... eligible for duty-free treatment ... unless the ethyl alcohol or mixture thereof is an indigenous product of that insular possession or beneficiary country." Section 423(a). The negative language, it is asserted, means that the rule of § 423(a) is merely additional to the other requirements of 19 U.S.C. § 2703 and the rest of CBERA as it now stands.

Plaintiffs further contend that this Court is capable of awarding relief, regardless of the construction of § 423 adopted. Until the effective date of § 423, December 31, 1986, *see* § 423(g), the current version of CBERA is controlling. A declaration prior to that date that the Customs rulings are invalid would prevent duty-free treatment for the 1.5–2.0 million gallons of ethanol per month, *see Party-in-Interest's Motion to Stay* at 8, n. 1, entering into the United States market under CBERA. *But see infra* at 12 n. 8.

Additionally, plaintiffs oppose the motion to dismiss on the grounds that a declaratory judgment by this Court overturning Customs rulings would affect the adminis-tration of both existing and future trade laws that contain provisions similar to those of CBERA. Finally, plaintiffs contend that the equities favor denial of the motion. Plaintiffs allege that the domestic ethanol industry will be injured by continuing duty-free imports while Tropicana's only burden will be the cost of having to reply to plaintiffs' discovery demands which it voluntarily assumed by intervening in this action.

**Discussion**

*Section 423*

Congress has prescribed a unified scheme for tariff treatment of ethyl alcohol fuel. It has amended CBERA at 19 U.S.C. § 2703(a)(1) to be "subject to section 423 of the Tax Reform Act of 1986." Section 423(f)(2). All fuel ethanol from a beneficiary country qualifying for duty-free treatment must meet the criterion of § 423(a) as defined in § 423(c) except for the 20,000,000 gallons covered by § 423(b) which falls outside this statutory plan. There is no indication that Congress sought to retain the present substantial transformation law with respect to the tariff treatment of fuel ethanol imports governed by § 423. The Conference Committee Agreement states:

> The conference agreement adopts in most respects section 864 of H.R. 4800. In so doing, the conferees disapprove U.S. Customs Service rulings that have found the mere dehydration of industrial-grade ethanol into fuel-grade ethanol to constitute a substantial transformation sufficient to qualify the dehydrated ethanol as a product of a CBI country or insular possession and therefore entitled to duty-free treatment. . . .

> Under the conference agreement, ethyl alcohol (or an ethyl alcohol mixture) may be admitted into the United States duty-free, if it is an indigenous product of a U.S. insular possession or CBI beneficiary country.

> . . . .

> Transitional exemptions are provided during 1987 and 1988 for up to 20 million gallons per year each produced by cer-

tain azeotropic distillation facilities: (1) located in a CBI country or insular possession and in operation on January 1, 1986; or (2) the equipment for which was, on January 1, 1986, ready for shipment to and installation in a CBI country.

H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. II–131—II–132 (1986).

It is clear that Congress was displeased with the Customs rulings at issue in this case.[5] It is equally clear that Congress sought to give importers a respite from the stricter requirements embodied in the Tax Reform Act. The Court cannot agree that Congress chose, however, to ratify legislation that would ultimately serve to deny all duty-free treatment to the imported ethanol. This is what plaintiffs' construction of § 423 would accomplish. The House Committee Report to a predecessor bill, § 264, H.R. 4750, 99th Cong., 2d Sess. (1986),[6] materially identical to § 423, explains:

*In fairness to companies that have made significant economic investment in reliance on existing customs rulings,* the section contains two grandfather clauses. The first one sets an annual cap of 20 million gallons during 1987 and 1988 for anhydrous alcohol produced in an azeotropic distillation facility which was in operation on January 1, 1986. The other grandfather clause excepts for one year a facility meeting certain requirements and located in the U.S. Virgin Islands.

H.Rep. No. 581, 99th Cong., 2d Sess. at 213 (1986) (emphasis added).

Plaintiffs' construction of the legislation would drain the exemptions contained in § 423(b) of any meaning and would conflict with the legislative history cited above. It would be anomalous for Congress, which enacted legislation with the stated purpose of protecting importers relying on existing Customs rulings, to then subject those importers to the review of this Court which might very well rob them of the exemption. In short, why bother to enact an exemption that can be terminated by the decision of a judge? If indeed this were the legislative will, surely it could have been expressed in a far clearer fashion than it has been in this legislation.

Plaintiffs' construction of § 423(a) is likewise flawed. It is not sensible to interpret the requirements of § 423 as adding to all of the requirements under existing law. The Congressional purpose in amending CBERA was to encourage greater use of local sugar supplies in the Caribbean region and to disapprove of "pass-through" operations such as the mere dehydration of ethanol by azeotropic distillation. H.Rep. 581, 99th Cong., 2d Sess. 212–13 (1986). The legislation does this by mandating the use of specified percentages of locally fermented alcohol in ethanol mixtures to be imported duty-free into the United States. Section 423(c)(2)(B). For this Court to require that Tropicana, in order to obtain duty-free treatment, demonstrate that dehydration is a substantial transformation, in addition to meeting the dictates of § 423, would virtually guarantee that no fuel ethanol could be imported duty-free unless it were entirely produced and distilled in a Caribbean Basin nation.[7] This Court is un-

---

**5.** I agree that nowhere is there "an indication that Congress meant to endorse or sanction these letter rulings," *Plaintiffs' Opposition to the Motion for a Stay* at 10, but I cannot accept the further assertion that Congress did not intend to "immunize them from judicial challenge in this case." *Id.* It would be curious if the legislature were to ratify legislation intending that a court review administrative rulings it unequivocally rejected in that legislation.

**6.** The Conference Committee Agreement states that § 423 adopts "in most respects" the predecessor legislation, § 864, H.R. 4800, 99th Cong., 2d Sess. (1986). *See infra* at 1010. Section 864 is largely identical to § 264, H.R. 4750, except

for respective subsections (c)(2)(B), which provide for differing local content requirements.

**7.** Plaintiffs' construction would render the distinction Congress drew between § 423(c)(2)(A) and § 423(c)(2)(B) nugatory. The former provision allows duty-free entry for fuel ethanol completely produced, i.e., both fermented and distilled in a *beneficiary country.* The latter provision allows for duty-free entry of fuel ethanol that is merely distilled in a beneficiary country so long as it is dehydrated from locally produced hydrous ethanol of a specified percentage. Congress could have chosen simply to require all ethanol to be fully processed into fuel-grade ethanol within a beneficiary country. It specifi-

willing to frustrate the operation of § 423 in such a manner.

The Court also cannot accept plaintiffs' contention that Congress, specifically aware of this litigation, intended that the legislation not interfere with the continuation of the action. While the legislative history is not illuminating on this point, Congress has demonstrated that, in other contexts, when it wishes to do so, it is quite capable of explicitly preserving existing causes of action. *See, e.g., Train v. City of New York,* 420 U.S. 35, 41 n. 8, 95 S.Ct. 839, 843 n. 8, 43 L.Ed.2d 1 (1975) (action not moot where new legislation expressly preserved existing litigation). Indeed, there is nothing improper with the legislature enacting statutes whose effect is to terminate existing claims. *See United States Dep't of Justice v. Provenzano,* 469 U.S. 14, 15, 105 S.Ct. 413, 414, 83 L.Ed.2d 242 (1984) (per curiam); *Taxpayers for the Animas-La Plata Referendum v. Animas-La Plata Water Conservancy Dist.,* 739 F.2d 1472, 1477 (10th Cir.1984).

*Justiciability*

Tropicana contends that the legislation will render plaintiffs' claims moot. *Party-in-interest's Motion to Stay* at 6. It will also defeat the existence of a genuine case or controversy. *Id.* at 7. Plaintiffs' response is that, even adopting Tropicana's construction of § 423, Customs rulings will stand with respect to imports of ethanol pursuant to the United States-Israel Free Trade Area Implementation Act of 1985, Pub.L. 99–47, 99 Stat. 82 (1985), codified following 19 U.S.C. § 2112 (Supp. III 1985). This statute contains provisions similar to those of CBERA. *Compare* 19 U.S.C. § 2703 *with* Pub.L. 99–47, § 402. Plain-

tiffs also speculate that the United States may enter trade agreements with Canada, pursuant to 19 U.S.C. § 2112 (1982 & Supp. III 1985), under terms similar to those of CBERA. Imports of ethanol from Canada or Israel would be governed by the Customs rulings as they now stand, and not by § 423, since § 423 only applies to imports from the Caribbean or U.S. insular possessions.

Plaintiffs also contend that the action is not moot at this point since Customs can continue to apply its current administrative rulings. Theoretically, a judgment in this action may have impact upon entries made prior to December 31, 1986.[8] As a practical matter, however, it is not feasible to conduct discovery, to schedule a trial, and render judgment by that date.[9] The Customs Service will initially implement the provisions of the new legislation. Parties aggrieved by administrative interpretations made under the new law can then seek judicial redress. This action, brought to contest the liquidation of one entry under current law, is not the appropriate vehicle to predict future applications of new legislation. Bearing in mind the prospective nature of § 1516 relief, it would be foolish to commit the resources of this Court and the parties to meaningless litigation.

Plaintiffs' other claims are wholly unconvincing. If plaintiffs believe that ethanol imports from Israel or Canada are being improperly liquidated, then challenge should be made to those entries. I fail to see how plaintiffs' extensive discovery requests aimed at Tropicana shed any light on azeotropic distillation facilities in Israel or Canada, if indeed there are any.[10] As

---

cally did not do that and provided the alternative found in § 423(c)(2)(B).

**8.** It should be noted, however, that the Court was informed, in a letter from counsel for the defendants dated Nov. 17, 1986, that "Tropicana has assured the United States and counsel for [plaintiffs] that it will not import any ethanol prior to January 1, 1987."

**9.** Moreover, there is a question as to what is the "final judicial decision in the action," referred to in 19 U.S.C. § 1516(f). In light of 28 U.S.C.

§ 2645(c) (1982), it might be argued that any decision of this Court would not be final until a timely filed appeal was decided. In that event, it becomes even more obvious that final judgment in this action is not possible by December 31, 1986.

**10.** Tropicana has submitted an affidavit from a Branch Chief of the Office of Enforcement of the Customs Service who avers that from Oct. 1, 1984 through July 31, 1986, there were no entries of ethyl alcohol from Israel for nonbeverage purposes under item 427.88, TSUS.

explained above, the question of whether imports of ethanol from outside the Caribbean Basin region are eligible for duty-free status is best left for the time when actual entry of such imports is being made. At that time, the administrative agency, and ultimately the courts, can consider the statute and the particular factual circumstances at issue with regard to those imports.

### Conclusion

Congress has indicated its disagreement with administrative rulings affording duty-free treatment to fuel ethanol merely distilled in the Caribbean and has enacted legislation which renders, for all practical purposes, the current controversy moot.[11] The Court has considered, for the purposes of this motion, the effect of § 423 on the current version of CBERA. It remains the task of Customs to apply the new statute to actual entries made after December 31, 1986. At that time, plaintiffs may seek to challenge the application of the statute. This Court, however, is unwilling to continue the litigation where there is no possibility of rendering a meaningful judgment. Therefore, this action is hereby dismissed.

---

**11.** The Court expresses no opinion as to whether ethanol merely distilled in a beneficiary country has been substantially transformed thereby qualifying for duty-free treatment under CBERA as originally enacted. It is important to note that the legislative history to § 423 is not necessarily reflective of the intent of the Congress that initially drafted CBERA. Generally, the views of a subsequent Congress carry little weight in interpreting prior legislation. *Maine Potato Council v. United States,* 9 CIT 293, 613 F.Supp. 1237, 1243 (1985) citing *United States v. Southwestern Cable Co.,* 392 U.S. 157, 170, 88 S.Ct. 1994, 2001, 20 L.Ed.2d 1001 (1968); *South-* *eastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). At the same time, this approach is not universally followed. *See, e.g., Heckler v. Turner,* 470 U.S. 184, 211, 105 S.Ct. 1138, 1153, 84 L.Ed.2d 138 (1985); *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 380–81, 89 S.Ct. 1794, 1801–02, 23 L.Ed.2d 371 (1969) (amendatory legislation evinced widespread Congressional intent to ratify long-standing construction of statute). In any event, the Court, since it does not reach the merits of plaintiffs' claim, need not assess the retrospective weight of the legislative history of the Tax Reform Act.